1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

SOUTHERN DISTRICT OF CALIFORNIA

11

12 | MARTIN MACK BASHINSKI JR.,

Case No.:  23-cv-01026-JO-JLB

13 | Plaintiff,

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL MEDICAL RECORDS RELEASE**

14 | v.

15 | THE UNITED STATES OF AMERICA,

16 | Defendant.

**[ECF Nos. 24; 26]**

17

18      Before the Court is a Motion to Compel filed by Defendant United States of America

19 ("Defendant").  (ECF No. 24.)  *Pro se* plaintiff Martin Mack Bashinski, Jr. ("Plaintiff")

20 filed an opposition.[1]  (ECF No. 26.)  For the reasons set forth herein, the Court **GRANTS**

21 Defendant's motion as modified below.

22 **I.      BACKGROUND**

23      Plaintiff filed the underlying action pursuant to the Federal Tort Claims Act, 28

24 U.S.C. §§ 2671–2680, alleging medical malpractice pertaining to care he received through

25

26

27 [1]      Although Plaintiff entitled his filing "Plaintiff's Motion to Object to Defendant's

28 Motion to Request Other Than Related/Relevant Medical Records," based on content and
context, the Court construes the filing as Plaintiff's opposition.

the United States Department of Veterans Affairs ("VA").  (ECF No. 1.)  Specifically, Plaintiff asserts that a retinal tear in his left eye was neither timely diagnosed nor properly treated by VA-affiliated health care providers, resulting in additional permanent damage. (*Id.* at 6–10.)  As relief, Plaintiff seeks $1,000,000 in damages for, *inter alia*, past and future medical expenses, "physical pain," "suffering," "mental anguish," and "the loss of enjoyment of life."  (*Id.* at 13.)

On August 8, 2023, in advance of the parties' Rule 26(f)[2] conference, Defendant sent Plaintiff a draft joint discovery plan and an authorization to release medical and psychiatric information.  (ECF No. 24 at 2.)  The authorization form directs "all healthcare providers (military or civilian), all counselors, all ancillary and support providers, all billing and collection persons, all insurers, all administrators, and all related service providers" to release "[a]ny and all records created between January 1, 2011, to the present . . . regarding or relating to the health care of [Plaintiff]" to Accutech Legal Support Services.  (ECF No. 24-2.)  The parties then met and conferred telephonically on August 16, 2023, regarding the draft documents.  (ECF No. 24 at 2.)

On August 29, 2023, the parties filed a joint discovery plan, which includes that "Plaintiff agrees to sign an authorization form permitting the United States to obtain his medical and psychological records from any applicable provider(s).  The United States agrees to collate any records received and provide them to Plaintiff."  (ECF No. 10 at 4–5.)

On September 7, 2023, Plaintiff raised objections to the authorization form. (ECF No. 24 at 3.)  The parties met and conferred by video that same day.  (*Id.*)  On October 5, 2023, the parties raised the instant dispute with the Court pursuant to Section V of the undersigned's Civil Chambers Rules.  (*See* ECF No. 19.)  The Court held informal discovery conferences with the parties on October 13, October 17, and October 26, 2023.

---

[2]    All references to Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

(*See* ECF Nos. 21; 22; 23.)  Initially, Plaintiff agreed he would provide a signed release for each provider; however, after Defendant received what it represents to be partial medical record productions, Plaintiff expressed he would not produce anything further nor would he sign any authorization form.  (ECF No. 24 at 3.)  Accordingly, the Court issued a briefing schedule (ECF No. 23), and the instant motion timely followed (ECF No. 24).

## II.    LEGAL STANDARD

A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*  Rule 34 further provides that a party may serve requests for documents, electronically stored information, or tangible things on any other party within the scope of discovery defined in Rule 26(b).  Fed. R. Civ. P. 34(a).  If a party fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel.  *See* Fed. R. Civ. P. 37(a).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)."  *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quoting *Bryant v. Ochoa*, No. 07-CV-00200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)).  "District courts have broad discretion in determining relevancy for discovery purposes."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"  *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009).  However,

the Court must—either on motion or *sua sponte*—"limit the frequency or extent" of otherwise permissible discovery if the Court finds the request "unreasonably cumulative or duplicative" or the discovery sought is obtainable from a "more convenient, less burdensome, or less expensive" source.  Fed. R. Civ. P. 26(b)(2)(C)(i).

## III.   DISCUSSION

Defendant seeks to compel Plaintiff to sign the authorization releasing all medical and psychiatric information from January 1, 2011, to the present on the grounds that the request is relevant, proportional, and necessary to defend itself in the instant action. (ECF Nos. 24 at 4–7; 24-2.)

Plaintiff opposes the motion arguing there are no relevant records prior to January 28, 2019,[3] the request is "redundant, unnecessary, and a waste of time," the motion is violative of Plaintiff's constitutional rights, and that Defendant is already in possession of all requested VA records.  (ECF No. 26 at 1–5.)  However, Plaintiff agrees to release "any related and or [sic] relevant psychiatric records" both from before and after the date of injury and "every medical record related and relevant, subsequent to March of 2017." (*Id.* at 2, 4.)

### A.      Relevancy and Overbreadth

Plaintiff argues that the request is irrelevant and overbroad because there are "no entries of any eye disease or eye condition" prior to January 28, 2019, when the spontaneous posterior vitreous detachment[4] occurred.  (ECF No. 26 at 2–3.)  On the other hand, Plaintiff also states that he will release "related and relevant" records.  (*Id.* at 2, 4.)

---

[3]      Plaintiff cites January 28, 2019, as the date of his injury in his opposition (*see, e.g.*, ECF No. 26 at 2–3); however, the complaint delineates events that occurred in April and May of 2019, and does not reference January 28, 2019 at all (*see generally* ECF No. 1).

[4]      Posterior vitreous detachment is the "[d]etachment of the corpus vitreum . . . from its normal attachments, especially the retina, due to shrinkage from degenerative or inflammatory conditions, trauma, myopia, or senility."  *Posterior Vitreous Detachment*, Nat'l      Libr.      of      Med.:      Nat'l      Ctr.      for      Biotech.      Info.,

Defendant asserts all Plaintiff's medical records—physical and mental—are relevant. First, Defendant argues that records related to Plaintiff's "left eye are needed to assess his medical malpractice claim and the damages allegedly flowing from the VA's treatment of the eye." (ECF No. 24 at 3.) Second, Defendant argues that records related to Plaintiff's "general health conditions that may independently limit his daily activities" are relevant because "Plaintiff claims his impaired sight significantly impairs his ability to carry out daily living activities." (*Id.*) Defendant specifically cites to Plaintiff's disclosure of sciatica as a condition that "limit[s] his ability to sit for long periods and ambulate." (*Id.* at 3–4.) Third, Defendant argues that "[r]ecords related to Plaintiff's psychological treatment are relevant to assessing the nature and extent of his emotional damages associated with the alleged malpractice." (*Id.* at 3.)

First, the Court finds that any records regarding Plaintiff's left eye health are generally relevant to Plaintiff's medical malpractice claim. Specifically, any medical records pertaining to Plaintiff's eyes would provide relevant context for the state of his ocular health leading up to the emergency care Plaintiff received from the VA providers, which is the subject of his malpractice claim. Although Plaintiff asserts the issue occurred spontaneously, thus implying that that no context is necessary, such an opinion would be for an expert to make, and objections thereto would go to the weight of the evidence rather than discoverability. Furthermore, Defendant is entitled to obtain the discovery that answers the questions raised by the matters at issue in this litigation; it is not obligated to simply accept Plaintiff's representations about the state of the evidence Plaintiff—and not Defendant—has control over.

Second, the Court finds that medical records regarding Plaintiff's overall physical health—beyond that of his eyes alone—are of some relevance in determining the extent of Plaintiff's alleged damages. As Defendant notes, if Plaintiff had preexisting medical

---

https://www.ncbi.nlm.nih.gov/mesh/?term=posterior+vitreous+detachment [https://perma.cc/R3UM-J3XZ].

conditions that impacted the activities he could engage in—such as sciatica that limited his ability to walk—then Defendant is entitled to such discovery to test the causation of Plaintiff's alleged damages.  *See Larson v. Bailiff*, No. 13-CV-2790-BAS-JLB, 2015 WL 4425660, at *4 (S.D. Cal. July 17, 2015).

Third, the Court further finds that records pertaining to Plaintiff's psychiatric conditions before and after the alleged malpractice are generally relevant to Plaintiff's requested relief.  Plaintiff alleges, *inter alia*, "anxiety every time [he] ha[s] to drive," numerous examples of loss of enjoyment, "frustration caused by the inability to participate in the activities" previously enjoyed, and "mental anguish."  (ECF No. 1 at 10–13.)  As compensation, Plaintiff seeks $700,000 for his pain and suffering.  (*Id.* at 13.)  Plaintiff's mental health records are relevant to identifying whether, and to what extent, Plaintiff's mental distress was caused by the VA's providers' actions, as alleged.  *See Doe v. City of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999) ("But to insure [sic] a fair trial, particularly on the element of causation, the court concludes that [the] defendants should have access to evidence that [the plaintiff's] emotional state was caused by something else. [The d]efendants must be free to test the truth of [the plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct.  Once [the plaintiff] has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim.") (emphasis in original); *Williams v. Cnty. of San Diego*, No. 17-CV-00815-MMA-JLB, 2019 WL 2330227 (S.D. Cal. May 31, 2019), *objections overruled*, No. 17-CV-00815-MMA-JLB, 2019 WL 3543792 (S.D. Cal. Aug. 5, 2019) (holding that discovery requested relating to the plaintiffs' mental and emotional health was relevant because of the emotional distress damages the plaintiffs sought); *Carter-Mixon v. City of Tacoma*, No. C21-05692-LK, 2022 WL 4366184, at *4 (W.D. Wash. Sept. 20, 2022) (holding the plaintiffs put their "mental health history at issue by asserting damages for lost enjoyment of life, loss of consortium, and 'more than garden-variety' emotional distress as a result of [the d]efendants' actions.").

///

Accordingly, Defendant is entitled to discover Plaintiff's medical and mental health records, as they are relevant to determining whether Plaintiff suffered from pre-existing injuries and whether the injuries Plaintiff is alleging were actually caused by the alleged malpractice.

However, despite the relevance of the records pre-dating Plaintiff's injury, Defendant has failed to demonstrate why the time frame of thirteen years is appropriate or necessary, considering Plaintiff's privacy interests in his information, the burden on the third-party records holders, and the diminishing likely benefit of increasingly remote records. In that respect, the Court finds that Defendant has failed to support its extensive request. As such, Plaintiff's objections to the breadth of Defendant's request are sustained in part. In light of the issues presented, the Court finds that a request for medical and mental health records beginning five years prior to the 2019 incident is appropriate. Defendant's authorization form is relevant and proportional only to the extent it seeks medical and mental health records from January 2014 through the present.

**B.   Privilege**

Although Plaintiff does not expressly raise the issue of privilege, in light of Plaintiff's *pro se* status and his concerns regarding his rights (*see* ECF No. 26 at 1, 4–7), the Court notes that Defendant's motion implicates the federal psychotherapist-patient privilege.

In federal question cases such as this, the federal law of privilege applies. *See* Fed. R. Evid. 501. Federal law recognizes the privileged relationship between a patient and his psychotherapist but not more generally between a patient and his physician. *See Jaffee v. Redmond*, 518 U.S. 1, 9–10 (1996). Thus, Plaintiff's medical information regarding physical health care is not shielded from discovery by any physician-patient privilege, as none exists under federal law. However, any confidential communications between Plaintiff and licensed psychiatrists, psychologists, or other similar licensed mental health providers made in the course of diagnosis or treatment would qualify for protection unless Plaintiff has waived the psychotherapist-patient privilege. *See Jaffee*, 518 U.S. at 15 n.14

("Like other testimonial privileges, the patient may of course waive the [psychotherapist-patient] protection.").  Here, unlike with his physical medical records, Plaintiff agrees to release his mental health records, affirmatively waiving any psychotherapist-patient privilege over them.  (*See* ECF No. 26 at 4 ("I would be glad to release any related and or [sic] relevant psychiatric records prior to the injury on the 28th of January 2019.  I will release any related and or relevant psychiatry records after January 28th 2019.")  Plaintiff's consent acts as an express waiver of any privilege over his mental health records.

However, even absent Plaintiff's consent, the psychotherapist-patient privilege has been waived by the nature of this lawsuit.  Since the Supreme Court acknowledged the psychotherapist-patient privilege under federal common law, district courts have adopted varying approaches to determine whether a patient has waived the privilege.  Courts in this district follow the "broad" approach, which holds that "a plaintiff who seeks to recover for emotional distress damages" has waived the privilege by "relying on [his] emotional condition as an element of [his] claim."  *See Doe v. City of Chula Vista*, 196 F.R.D. at 568.  Because Plaintiff is seeking $700,000 of damages for pain and suffering, consisting of anxiety, frustration, loss of enjoyment, and mental anguish, Plaintiff has placed his mental health at issue.  As such, regardless of his consent, Plaintiff also has implicitly waived any psychotherapist-patient privilege over his mental health records.

Accordingly, the entirety of Plaintiff's medical records—both physical and mental—are not shielded from discovery due to privilege.

## C.  Plaintiff's Constitutional Rights

Plaintiff asserts that Defendant's motion violates his constitutional rights.  (ECF No. 1, 4–5.)  In addition to citing due process under the Fifth and Fourteenth Amendments[5] (*id.*

---

[5]    The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. The Due Process Clause of the Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. As Plaintiff is suing federally affiliated medical providers under a federal

23-cv-01026-JO-JLB

at 1), Plaintiff asserts that Defendant's motion infringes on his constitutional rights by dictating which form Plaintiff must sign to release his records (*id.* at 4–5).

First, considering Plaintiff's *pro se* status, the Court construes Plaintiff's due process argument as an assertion of a constitutional right to privacy. The Supreme Court has recognized that individuals have privacy interests "in avoiding disclosure of personal matters [and] in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977). However, the Supreme Court has stopped short of expressly recognizing that those interests are constitutionally protected. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147, 131 S. Ct. 746, 756, 178 L. Ed. 2d 667 (2011) ("As was our approach in *Whalen*, we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance."). Similarly, the Ninth Circuit has acknowledged there may be a limited right to privacy in medical records in certain contexts. *See Doe v. Garland*, 17 F.4th 941 (9th Cir. 2021) ("[I]ndividuals may have a constitutional privacy interest in certain, highly sensitive information[.]"). Where the court recognizes a "constitutionally-based right of privacy that can be raised in response to discovery requests," resolution of a party's privacy objection "requires a balancing of the need for the information sought against the privacy right asserted." *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (collecting cases). "When a plaintiff places his medical conditions at issue, his expectation of privacy regarding those conditions is diminished." *Larson*, 2015 WL 4425660, at *5; *see also Syed Nazim Ali v. Gilead Sci., Inc.*, No. 18CV00677LHKSVK, 2018 WL 3629818, at *2 (N.D. Cal. July 31, 2018) ("[A] person waives their right to privacy by bringing claims concerning physical or mental health injuries and seeking damages for those injuries."). Here, Plaintiff has sufficiently placed both his physical and mental health at issue by

---

law, the Fourteenth Amendment is inapplicable to the instant case. *See District of Columbia v. Carter*, 409 U.S. 418, 424 (1973) ("[A]ctions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment.").

alleging medical malpractice and by seeking significant emotional distress damages. Defendant's interest in obtaining relevant discovery to defend itself in the instant action and to assess its settlement position outweighs Plaintiff's privacy concern. Further, the Court finds that the existing Protective Order is adequate to protect Plaintiff's privacy concerns. *See Soto*, 162 F.R.D. 616 ("A carefully drafted protective order could minimize the impact of this disclosure.").

Second, Plaintiff does not point to, nor is the Court aware of, any authority providing an individual a constitutionally-based right to use a specific form for releasing medical records. Further, the Court notes that throughout the multiple informal discovery conferences, the parties discussed Plaintiff's use of VA Form 10-5345 and Defendant agreed to Plaintiff's use of the VA form, so long as the scope and effect were the same as the authorization form Defendant provided. However, by the third discovery conference, Plaintiff had effectuated only partial production and refused to further engage with Defendant on this issue.

Accordingly, the Court overrules Plaintiff's constitutional objections to Defendant's use of any release form other than the VA Form 10-5345.

### D. Possession, Custody, or Control

Under Rule 34, documents sought in discovery motions must be within the "possession, custody or control" of the party upon whom the request is served. Fed. R. Civ. P. 34(a)(1); *see also Soto*, 162 F.R.D. at 619. Actual possession of the requested documents is not required. *Soto*, 162 F.R.D. at 619. "A party may be required to produce a document that is in the possession of a nonparty entity if the party has the legal right to obtain the document." *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012). Accordingly, courts have found it appropriate to order parties to sign authorizations releasing relevant medical records from a party's treatment providers. *See, e.g.*, *Archie v. Pop Warner Little Scholars, Inc.*, No. CV166603PSGPLAX, 2019 WL 13020441, at *1 (C.D. Cal. June 13, 2019) (collecting cases); *Syed Nazim Ali*, 2018 WL 3629818, at *2–3. ///

In light of the facts of this case and having determined that Defendant is entitled to the discovery sought as narrowed by the Court, the Court will provide Plaintiff a final opportunity to sign an authorization form.  As set forth more fully below, if Plaintiff declines to sign and return the authorization form prepared by the Defendant consistent with this Order, Defendant is authorized to issue subpoenas of Plaintiff's health providers, and the health care providers to whom Defendant issues subpoenas are ordered to comply with the subpoenas as if accompanied by an authorization form signed by Plaintiff.

### E.    Alleged Violation of the Protective Order

Plaintiff also raises concerns that Defendant's treatment of the medical records already within its possession constitutes a violation the Protective Order.  (ECF No. 26 at 4–5.)  Specifically, Plaintiff alleges that Defendant sent Plaintiff a copy of his medical records by FedEx for general delivery without requiring a signature for release.  (*Id.* at 4.) As a result, Plaintiff alleges that FedEx left the records "exposed to theft" on his front porch.  (*Id.*)

On September 27, 2023, the Court issued a Protective Order governing all confidential information and materials exchanged throughout the course of this litigation. (*See* ECF No. 17.)  Although the Protective Order does not address this specific situation, it does set general guidelines for conduct of party and counsel. In pertinent part, the Protective Order provides that "[a]ll confidential information must be held in confidence by those inspecting or receiving it . . . .  Counsel for each party, and each person receiving confidential information, must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information."  (*Id.* ¶ 14.)

The Court shares Plaintiff's concerns about Defendant's handling of his medical records.  Considering that Defendant's conduct did not contravene an express provision of the Protective Order, and because Defendant's action did not result in the actual exposure of Plaintiff's records to another, the Court does not find in this instance that Defendant's actions are sanctionable.  However, the Court cautions Defendant that any future delivery

of confidential materials should require Plaintiff's signature in order to comply with the "reasonable precautions" provision of the Protective Order.

**IV.   Conclusion**

For the reasons set forth above, Defendant's motion to compel (ECF No. 24) is **GRANTED** as modified.  Further, **IT IS HEREBY ORDERED**:

1.     Defendant shall amend the authorization form (ECF No. 24-2) to reflect the time period from January 28, 2014, to the present.

2.     Within **three (3) days** of the electronic docketing of this Order, Defendant shall provide Plaintiff with the amended authorization form (ECF No. 24-2) that complies with the narrowed date set forth herein.

3.     Plaintiff has until **ten (10) days** after the electronic docketing of this Order to sign the updated authorization form and return it to Defendant.

4.     If Plaintiff declines to sign and return the updated authorization form within **ten (10) days** of the electronic docketing of this Order, Defendant is authorized to issue subpoenas of Plaintiff's health providers with records from the relevant time period.  Health providers to whom Defendant issues subpoenas are ordered to comply with the subpoenas is if accompanied by an authorization form signed by Plaintiff.

**IT IS SO ORDERED.**

Dated:  January 22, 2024

Hon. Jill L. Burkhardt
United States Magistrate Judge